IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEKHI JOHNSON and AMBER GARRITY, | No. 4:25-CV-01422 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| AGENT BENJAMIN HITESMAN, in his individual capacity under color of law, | |
| Defendant. | |

**MEMORANDUM OPINION**

APRIL 16, 2026

## I.   BACKGROUND

On December 17, 2025, Plaintiffs Mekhi Johnson ("Johnson") and Amber

Garrity ("Garrity") (collectively, "Plaintiffs") filed a seven-count Amended

Complaint against Defendant Agent Benjamin Hitesman ("Defendant").[1]

On December 24, 2025, Defendant filed a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] The motion is

now ripe for disposition; for the reasons that follow, it is granted in part and denied

---

[1]   Doc. 30 (Amend. Compl.). Plaintiffs filed their original complaint on July 31, 2025, against several other defendants including the Williamsport Bureau of Police, the City of Williamsport, the Lycoming County Juvenile Probation Office, and Juvenile Probation Officer Nathan Hill. Doc. 1 (Compl.). Since that time, all Defendants other than Hitesman have been dismissed by stipulation. Docs. 20, 26, 27, 34. Accordingly, only claims against Hitesman remain.

[2]   Doc. 32 (Mot.).

in part. Plaintiffs will be provided leave to amend for those counts which are not dismissed with prejudice.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and *Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

---

[3]    550 U.S. 544 (2007).
[4]    556 U.S. 662 (2009).
[5]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[6]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[7] In this case, Defendant has asked the Court to additionally consider the Opinion and Order by Judge Ryan C. Gardner, of the Lycoming County Court of Common Pleas, attached to Defendant's motion as Exhibit A, as it is both a matter of public record and relied upon in Plaintiffs' complaint. The Court agrees that consideration of this document is proper.[8]

### B.    Facts Alleged in the Amended Complaint

The facts alleged in the Amended Complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Johnson, then a minor, lived with his mother Garrity in Williamsport, Pennsylvania.[9] On July 22, 2024, there were reportedly shots fired behind the Diamond Street Christian Church at around 7:45 pm.[10] A .380 shell casing was found near the area.[11] Surveillance footage from four nearby locations showed two individuals near the area at the time of the incident.[12] After the shots were fired, available footage from a private residence on Good Alley ("the Good Alley

---

[7]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[8]   *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting courts may consider both matters of public record and also those documents on which plaintiffs rely and whose authenticity is not disputed).

[9]   Doc. 30 at ¶¶ 5-6.

[10]   *Id.* at ¶¶ 8-9.

[11]   *Id.* at ¶ 9.

[12]   *Id.* at ¶¶ 10-14.

footage") depicted these two individuals running away from the scene, and the individual wearing a cream-colored hoodie appeared to be carrying an object concealed in the front pocket.[13] The Good Alley footage was quite brief, depicting the masked individuals for only four seconds.[14] Both figures were wearing hooded sweatshirts, one dark and one cream-colored, with the hoods pulled over their heads and masks largely concealing their faces.[15] Only small pieces of hair and a fraction of the individuals' faces were visible.[16]

Defendant Williamsport Police Agent Hitesman was investigating this incident.[17] After reviewing only the Good Alley footage, Defendant purported to identify the cream-colored hoodie individual as Johnson, and, based on this identification, obtained a search warrant for Garrity's residence.[18] The day after the shooting, July 23, 2024, Defendant and other officers from the Williamsport Bureau of Police and Officer Nathan Hill ("Hill") from the Lycoming County Juvenile

---

[13] *Id.* at ¶¶ 16-17.
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶¶ 11-18.
[16] *Id.* at ¶ 18.
[17] *Id.* at ¶ 19.
[18] *Id.* at ¶¶ 19-20. Plaintiffs' pleadings are slightly ambiguous about the information that motivated Defendant's identification. ("Investigating this incident, and based upon a review of the Good Alley footage, Williamsport Police Agent Benjamin Hitesman identifies the individual in the cream-colored sweatshirt as Plaintiff."). *Id.* at ¶ 19. However, in the next pleading, where Plaintiffs state that Defendant authored a search warrant based "upon his identification solely from the Good Alley video." *Id.* at ¶ 20. The Court will read the ambiguity in Plaintiffs' favor and resolve for the instant motion that Defendant identified the individual as Johnson only from his review of the short video.

Probation Office executed the search warrant on Plaintiffs' home.[19] In that search of Plaintiffs' home, agents found a .380 firearm with an altered or obliterated serial number, but none of the clothing depicted in the surveillance footage.[20] Police took Johnson into custody, and he was transferred to George Junior Republic for detention.[21]

On July 26, 2024, a Probable Cause / Detention hearing was held before the Honorable Ryan C. Gardner, Lycoming County Common Pleas Judge ("Judge Gardner").[22] At that hearing, Williamsport Police Agent Christopher Salisbury ("Salisbury") and Probation Officer Hill testified.[23] Salisbury repeatedly identified Johnson as the individual wearing the cream-colored hooded sweatshirt approximately fifteen times.[24] Judge Gardner found probable cause that Johnson had committed the alleged acts and ordered his continued detention.[25]

An August 5, 2024 evidentiary hearing was held where Defendant was present, and where Johnson's counsel requested a continuance due to "not having received and adequately reviewed all discovery from the Commonwealth."[26] Johnson's detention was continued. After obtaining and reviewing discovery,

---

[19]   *Id.* at ¶ 21.
[20]   *Id.* at ¶¶ 24-25.
[21]   *Id.* at ¶¶ 23, 26.
[22]   *Id.* at ¶ 28.
[23]   *Id.* at ¶ 29.
[24]   *Id.* at ¶ 31.
[25]   *Id.* at ¶ 34.
[26]   *Id.* at ¶¶ 35, 37.

Johnson's counsel filed a Notice of Alibi and Motion for Preservation of Testimony, for which a hearing was scheduled for August 23, 2024.[27] Before that hearing occurred, First Assistant District Attorney Martin Wade ("ADA Wade") contacted Johnson's counsel and provided them with text messages from July 24 and 25, which occurred after Johnson's arrest on July 23 but before Johnson's probable cause hearing on July 26.[28]

These communications were between Defendant and juvenile probation officers in which several officers informed Defendant that the individual in the cream-colored hoodie was not Johnson at all, but rather another juvenile, J.B.[29] Defendant was also informed that, during that interim period between Johnson's arrest and the detention hearing, juvenile probation officers had performed a home check of J.B.'s residence, locating the jeans and cream-colored sweatshirt depicted in the surveillance videos.[30] ADA Wade and Johnson's counsel informed Judge Gardner of this information; he immediately ordered Johnson's release to Garrity's custody and scheduled a hearing.[31]

That hearing was held on August 22, 2024.[32] Defendant testified that he identified Johnson in the Good Alley footage from what he believed were visible

---

[27]   *Id.* at ¶¶ 38-39.
[28]   *Id.* at ¶¶ 40-41.
[29]   *Id.* at ¶ 41.
[30]   *Id.* at ¶ 42.
[31]   *Id.* at ¶¶ 43, 44, 47.
[32]   *Id.* at ¶ 47.

dreadlocks coming from the head of the individual wearing the cream-colored hoodie.[33] Defendant also said that he did not include any facts underlying the identification in the search warrant application.[34] Defendant agreed that, one day after the search of Plaintiffs' residence and the arrest of Johnson, juvenile probation officers informed him that the individual from the Good Alley footage was J.B., who was under supervision of the juvenile probation office.[35] Probation officers also informed Defendant that they had seized the clothing worn in the video from J.B.'s residence and that Defendant "should focus his investigation on [J.B.];" Defendant testified that he "didn't think anything of" this information.[36] Defendant agreed that he never informed the district attorney or defense counsel of this new information, never completed a supplemental report, and took no immediate steps to investigate J.B. or to release Johnson.[37]

Juvenile Probation Officer Kaitlin Lunger ("Lunger") also testified at the August 22, 2024 hearing.[38] She said that on July 24, 2024, again between Johnson's arrest and the preliminary hearing, Defendant texted her several still photos of the two individuals from the footage asking if she could identify either.[39] This occurred

---

[33]   *Id.* at ¶ 48.
[34]   *Id.*
[35]   *Id.* at ¶ 49.
[36]   *Id.* at ¶¶ 49-50.
[37]   *Id.* at ¶¶ 51-55.
[38]   *Id.* at ¶ 56.
[39]   *Id.*

after Defendant authored the search warrant request purporting to identify Johnson. Lunger and other probation officers positively identified both individuals in the Good Alley footage to Defendant, neither of which was Johnson.[40] Specifically, Lunger told Defendant that the individual in the footage was J.B., and Defendant only responded to the message with the exclamation mark reaction.[41] The next day, Lunger was present for the search of J.B.'s house, and immediately messaged Defendant when they located the clothing from the video, to which Defendant gave no response.[42]

Probation Officer Hill testified that he also was part of the identification of J.B. on July 24 and the search of his residence on July 25.[43] Hill also informed Defendant of the identification of J.B. and findings of the search, to no response from Defendant.[44] Judge Gardner dismissed the Aggravated Assault charge with prejudice, reserving rulings on the other motions related to the findings from the search of Plaintiffs' residence.[45]

ADA Wade then contacted Johnson's counsel again, recommending that a deposition with Williamsport Police Agent Nakita Bonnell ("Bonnell") should be

---

[40]  *Id.* at ¶ 56.
[41]  *Id.*
[42]  *Id.* at ¶ 57.
[43]  *Id.* at ¶ 59.
[44]  *Id.*
[45]  *Id.* at ¶¶ 60-61.

scheduled.[46] In that deposition, Bonnell testified that she had been part of the investigation into the July 22, 2024 shooting incident.[47] Bonnell testified that when she told Defendant she would be applying for a search warrant of J.B.'s home, Defendant said "that's going to hurt my case," referring to the case against Johnson.[48]

Judge Gardner granted Johnson's Motion to Suppress the remaining evidence on September 25, 2024, and the Commonwealth withdrew all charges against Johnson.[49] Judge Gardner determined that it was "indisputable that [Defendant] failed to disclose to either the Commonwealth or defense counsel that he obtained independently corroborated information that he misidentified [Johnson] following his drafting and execution of the search warrant and prior to both the 72-hour detention hearing and the first scheduled evidentiary hearing."[50] Additionally, Judge Gardner determined that "[Defendant] omitted from his search warrant application highly relevant information within his knowledge that the issuing authority would wish to know because it would have significantly called into question the application's probable cause."[51]

---

[46]   *Id.* at ¶ 62.
[47]   *Id.* at ¶ 64.
[48]   *Id.* at ¶ 67.
[49]   *Id.* at ¶¶ 71-72.
[50]   *Id.* at ¶ 70.
[51]   *Id.*

In total, Johnson was detained for twenty-nine days at George Junior Republic before his release, spending his eighteenth birthday in custody.[52]

## C.    Analysis

Plaintiffs bring seven counts against Defendant: 1) a § 1983 claim for false arrest/false imprisonment in violation of the Fourth and Fourteenth Amendments of the United States Constitution and in violation of the Pennsylvania Constitution; 2) a § 1983 claim for deprivation of due process rights; 3) another Fourth Amendment false imprisonment / unlawful detention claim; 4) a malicious prosecution claim under the Fourth and Fourteenth Amendments; 5) an unlawful search claim under the Fourth Amendment; 6) an intentional infliction of emotional distress claim; and 7) a negligent infliction of emotional distress claim.[53]

### 1.    Waiver

In his reply brief, Defendant argues that Plaintiffs failed to address two of Defendant's arguments and therefore waived the issues: first, that Plaintiffs' Fourteenth Amendment claims for false arrest and false imprisonment must be dismissed because such claims are properly brought under the Fourth Amendment, and second, that Defendant's Fourteenth Amendment claim for malicious

---

[52]    *Id.* at ¶ 45.
[53]    Doc. 30 at Counts I-VII.

prosecution must be dismissed because of the lack of any clearly established procedural due process right.[54]

As to the first, Plaintiffs do not address the Fourteenth Amendment in their arguments regarding their false arrest and false imprisonment claims, despite it being clearly presented in Defendant's brief.[55] Plaintiffs also do not rebut Defendant's argument that such claims are more properly brought under the Fourth Amendment, and in their affirmative argument only analyze the Fourth Amendment's protections.[56] It would appear then that Plaintiffs have abandoned the Fourteenth Amendment for their false arrest and false imprisonment claims. Accordingly, I will deem argument to the contrary waived, and will address only Plaintiffs' Fourth Amendment claims for false arrest and false imprisonment.[57] Defendant's motion to dismiss the part of Count I referring to the Fourteenth Amendment is granted without prejudice.[58]

---

[54] Doc. 36 (Reply Br.) at 2-3. To the extent that Plaintiffs' claims reference the Fourteenth Amendment as a necessary vehicle under which to bring Plaintiffs' other claims through the incorporation provision, Plaintiffs may continue to do so. However, to the extent that Plaintiffs attempt to plead independent, substantive violations of the Fourteenth Amendment, Defendant's argument is meritorious.

[55] Doc. 35 (Br. in Opp.) at 4-6; Doc. 33 (Br. in Supp.) at 9.

[56] *Id.* at 4-6. Plaintiff argues only about the Fourth Amendment's probable cause requirements and cites cases which address only the Fourth Amendment right to be free from unlawful arrest. *See e.g., Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000); *Reedy v. Evanson*, 615 F.3d 197, 209 n.17 (3d Cir. 2010) (noting that the parties were bringing Fourteenth Amendment claims actually subsumed by their Fourth Amendment claims).

[57] *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008).

[58] In a footnote in Defendant's original brief, he notes that there is no private cause of action for damages under the Pennsylvania Constitution. Doc. 33 at 33-34 n.3. While Plaintiffs' pleadings for Count I contain an offhanded reference to the Pennsylvania Constitution, Doc. 30 at ¶ 27, Plaintiffs seemingly abandon any claims under the Pennsylvania Constitution in

Similarly, Defendant argued in his initial brief that Count IV's Fourteenth Amendment claim should be dismissed, as there is no clearly established procedural due process right under the Fourteenth Amendment to be free from malicious prosecution.[59] Then, in his reply brief, Defendant noted that Plaintiffs had not addressed this argument at all, and argued waiver.[60] This issue is slightly more complicated than the first argument, as Plaintiffs' contention regarding malicious prosecution is relatively bare.[61] However, here too, it appears that Plaintiffs are only referring to the Fourth Amendment when arguing the sufficiency of their § 1983 malicious prosecution claim.[62] Plaintiffs make no reference to the Fourteenth Amendment nor do they attempt to rebut Defendant's argument that the Fourteenth Amendment right is not clearly established. Accordingly, I find that Plaintiffs have waived any argument regarding the Fourteenth Amendment for their malicious prosecution claims and will analyze their claims as if brought only under the Fourth

---

their brief, as they make no reference to it. Therefore, the Court does not believe that Plaintiffs are actually asserting counts under the Pennsylvania Constitution, and the issue is moot.

[59]  Doc. 33 at 12-13.

[60]  Doc. 36 at 2-3.

[61]  Doc. 35 at 6-7.

[62]  *Id.* The difficulty here comes from Plaintiffs' somewhat conclusory and vague language around the right allegedly violated. *Id.* ("In this case, Defendant is not entitled to qualified immunity as Plaintiff has established a violation of a constitutional right that is clearly established."). However, the cases that Plaintiffs cite both analyze the Fourth Amendment and not the Fourteenth Amendment. *See Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (analyzing the elements of malicious prosecution when brought under the Fourth Amendment); *Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007).

Amendment. Defendant's motion to dismiss the Fourteenth Amendment part of Count IV is therefore granted without prejudice.

In a similar vein, Plaintiffs do not provide support for Count II, which they style as a § 1983 claim for "violation of due process."[63] The pleadings in Count II model that of a malicious prosecution claim[64] and Plaintiffs' brief again provides no analysis or support for any such claim as brought under the Fourteenth Amendment.[65] Accordingly, Defendant's motion to dismiss Count II is granted without prejudice.

In sum, before turning to the substantive analysis, Plaintiffs have waived argument under the Fourteenth Amendment for Counts I, II, and IV. Counts I and IV are dismissed without prejudice as to the Fourteenth Amendment and Count II is dismissed in full without prejudice. I will now proceed to analyze remaining Fourth Amendment arguments for Counts I, III, IV, and V as well as Plaintiffs' tort claims in Counts VI and VII.

### 2. Counts I and III – False Arrest / False Imprisonment

Plaintiffs' Count I is styled as a 42 U.S.C. § 1983 claim for false arrest / false imprisonment in violation of the Fourth and Fourteenth Amendments; Plaintiffs'

---

[63]   Doc. 30 at 15-16.

[64]   *Id.*

[65]   Plaintiffs' brief only discusses Count II once, in the procedural history section, when it states that "Count 2 claims a violation of due process." Doc. 35 at 1. Aside from naming the claims in that section, nowhere does Plaintiffs' brief discuss due process or the Fourteenth Amendment. *Id.* at passim.

Count III is also styled as a claim for false imprisonment in violation of the Fourth Amendment.[66]

"A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures."[67] To make out a claim for false arrest, a plaintiff must show that 1) there was an arrest; and 2) the arrest was made without probable cause.[68] "'[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'"[69] As such, these claims are largely co-extensive, dependent on whether there was probable cause for the arrest;[70] "[f]alse arrest and false imprisonment claims will 'necessarily fail if probable cause existed for *any one of the crimes charged* against the arrestee.'"[71]

"'Probable cause exists if there is a "fair probability" that the person committed the crime at issue.'"[72] "An officer has probable cause to arrest a person 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has

---

[66] Preliminarily, the Court is perplexed why Counts I and III are brought separately, seeing no difference between the two. As Defendant has not argued they are duplicative, though, the Court will not raise the issue *sua sponte* and will therefore analyze the claims together.

[67] *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008)

[68] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).

[69] *Kokinda*, 557 F. Supp. 2d at 592.

[70] *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013).

[71] *Harvard*, 973 F.3d at 199 (emphasis added) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016)); *see also Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 301-02 (3d Cir. 2024).

[72] *Harvard*, 973 F.3d at 199 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

been or is being committed by the person to be arrested.'"[73] Officers must consider both inculpatory evidence and plainly exculpatory evidence, even if substantial inculpatory evidence suggests that probable cause exists.[74] Unlike unlawful search claims, false arrest or imprisonment claims focus on a lack of probable cause at the time of detention; accordingly, even if a search is unlawful, a § 1983 false arrest claim is not cognizable if the unlawful search results in probable cause.[75] This is because the exclusionary rule, also known as the fruit of the poisonous tree doctrine, does not apply in § 1983 actions.[76]

Defendant argues that the search of Plaintiffs' residence uncovered a firearm, unlawfully possessed by Johnson with an obliterated serial number, giving probable cause to arrest Johnson on that charge regardless of the legality of the search.[77] Plaintiffs argue that Johnson was taken into custody before the search began, and that, therefore, there was no probable cause to arrest.[78] Plaintiffs also make reference to the illegality of the search, but this argument is without merit; as described above,

---

[73] *Harvard*, 973 F.3d at 199-200 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

[74] *Id.* at 200.

[75] *See, e.g., Hector v. Watt*, 235 F.3d 154, 156-157 (3d Cir. 2000) ("[A] plaintiff cannot recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional search."); *Washington v. Hanshaw*, 552 F. App'x 169, 173 (3d Cir. 2014) (reaffirming *Hector*'s conclusions); *Padilla v. Miller*, 143 F. Supp. 2d 479, 493 (M.D. Pa. 2001).

[76] *See, id.*; *see also, e.g., Price v. City of Phila.*, 239 F. Supp. 3d 876, 902-903 (E.D. Pa. 2017); *Cox v. Pate*, 283 F. App'x 37, 40 (3d Cir. 2008).

[77] Doc. 33 at 10-11.

[78] Doc. 35 at 4-6.

the exclusionary rule is inapplicable to § 1983 actions, rendering the legality of the search a nonissue for purposes of probable cause determination.[79]

Given the inapplicability of the exclusionary rule to the instant matter, it is beyond dispute that, once the gun was located, there was probable cause to arrest Johnson for charges related to possession of that gun. Plaintiffs agree that two of the charges for which Johnson was detained were related to the discovery of that gun.[80] Accordingly, the remaining questions are whether there was probable cause to detain Johnson before the gun was located in his residence and, if not, whether this brief detention results in a cognizable false arrest / imprisonment claim.

First, the Court finds it plausible that there was no probable cause to arrest Johnson before the discovery of the weapon in Plaintiffs' residence. Plaintiffs have pled that there was no reasonable basis for Defendant to believe that the individual in the Good Alley footage was Johnson, given the brevity of the video and the lack of recognizable features.[81] In Judge Gardner's opinion, he recites Defendant's testimony that Defendant did not even believe that Johnson had dreadlocks at the time of the video, yet purported to identify the perpetrator as Johnson based on the perpetrator's dreadlocks.[82] Defendant, for his part, does not contend that there was probable cause for the identification of Johnson, instead arguing that the discovery

---

[79]   *See supra*, notes 75-76.
[80]   Doc. 30 at ¶ 27.
[81]   Doc. 30 at ¶¶ 17, 18, 19.
[82]   Doc. 30-2 at 6.

of the gun provides probable cause to arrest.[83] While true for the period of time after the gun was located in Plaintiffs' residence, any detention prior to that discovery remains in question, given that there was plausibly no probable cause before the gun discovery.[84]

Second, Defendant argues that the brief period of detention between arrest[85] and discovery of the gun is a permissible detention, given that the officers were executing a search warrant.[86] The cases on which Defendant rely allow for detention during the execution of a facially valid search warrant.[87] Here, Defendant challenges that search warrant as facially invalid, as will be discussed at length *infra*. Neither party has addressed whether such a detention is permissible when premised on a facially invalid search warrant or a facially valid warrant obtained through a material misrepresentation.[88]

---

[83]  Doc. 33 at 10-11; Doc. 36 at 4-7.

[84]  While there was a judicially issued search warrant in this case, the validity of which will be analyzed at length *infra*, that warrant was for the search of Plaintiffs' residence, not for Johnson's arrest.

[85]  In brief, Defendant argues that Johnson was only arrested two days after the discovery of the gun. Doc. 33 at 11 (citing to Doc. 30 ¶ 24, Exhibit A p.2). Taking facts in the light most favorable to Plaintiffs, as we must at this stage, I will resolve the dispute in Plaintiffs' favor and hold that Johnson's custody at the beginning of the search begins his detention. Doc. 35 at 5.

[86]  Doc. 36 at 3-4.

[87]  Doc. 36 at 3-4 (all of Defendant's cases reference the execution of a presumably or explicitly lawful search warrant founded with probable cause).

[88]  *See Pinkney v. Meadville, Pa.*, 95 F.4th 743, 747-48 (3d Cir. 2024) (analyzing an arrest based on an arrest warrant which violated the plaintiff's rights when the officer made material misrepresentations to obtain the arrest warrant). Plaintiffs make reference to such a standard in their brief, but fall far short of properly addressing the issue. Doc. 35 at 5, 6. Accordingly, such issue should be resolved if necessary at the next stage of litigation.

Moreover, Johnson's detention was far more significant than a temporary detention at the residence while a search was conducted; he was immediately transported to police headquarters, away from the scene of the search.[89] As such, it is unclear if the search warrant detention exception would even apply here, and the parties have not put forward arguments to fully address the issue. Accordingly, the Court cannot hold the search warrant as a bar at this stage.

Further, Defendant claims that the brevity of the period between Johnson's detention and discovery of the gun renders Johnson's claim invalid, but provides no support for such a claim outside the context of a valid search warrant.[90] Indeed, the Court's cursory review of authority provides support for the opposite conclusion.[91]

At this juncture, Defendant has failed to show that no genuine dispute of material fact exists, and so Defendant's motion to dismiss Counts I and III is denied for the period of time between Johnson's arrest/detention and the discovery of the

---

[89] Doc. 30 at ¶ 23; *see Bailey v. U.S.*, 568 U.S. 186, 201-02 (2013) (holding that "[d]etentions incident to the execution of a search warrant are reasonable" but limiting the scope of such authority spatially to the premises in question). Defendant has not provided a case analyzing whether the immediate removal of Johnson from the premises to a second location comports with the permissible exception for detention while executing a search warrant, regardless of whether the warrant was lawful in this case.

[90] Doc. 36 at 4 ("Johnson cannot premise his false arrest claim on an alleged brief period of detention prior to the location of the firearm in his bedroom.").

[91] *See Anela v. City of Wildwood*, 595 F.Supp. 511, 512 (D.N.J. 1984) (holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).

gun. Defendant's motion to dismiss Couts I and III is granted with prejudice for the period of detention beginning after the discovery of the gun in Plaintiffs' residence.[92]

### 3.    Count IV – Malicious Prosecution

Plaintiffs next bring a claim for malicious prosecution under the Fourth Amendment.[93] The elements of a malicious prosecution claim are: "(1) the defendant[ ] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[ ] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[94] A criminal proceeding is "initiated" with the filing of such a proceeding, such as an indictment or similar initiating document; "[a] plaintiff's claim for malicious prosecution begins not with an arrest, which is not pursuant to legal process, but with the indictment."[95]

Unlike false arrest or imprisonment, other charges brought against a plaintiff that are supported by probable cause "do not create a categorical bar" to the plaintiff asserting malicious prosecution on the unfounded charges.[96] However, in *Chiaverini*

---

[92]  Given the legal insufficiency of this part of the claim, allowing amendment would be futile.

[93]  As noted above, Plaintiffs have waived any malicious prosecution claims arising under the Fourteenth Amendment, and the Court will only address the Fourth Amendment pleadings.

[94]  *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017).

[95]  *See Blenman v. Dover Police Dep't*, 214 F. Supp. 3d 261, 266-67 (D.Del. 2016); *Piazza v. Lakkis*, No. 3:11-CV-2130, 2012 WL 2007112, at *8 (M.D. Pa. June 5, 2012); *Collins v. City of Phila., Law Dep't*, 767 F. App'x 262, 264 (3d Cir. 2019).

[96]  *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 668 (2024).

*v. City of Napoleon*, the Supreme Court of the United States left open the question of what level of causation a plaintiff must demonstrate between an invalid charge and the plaintiff's seizure when valid charges have also been brought.[97] Nevertheless, it is clear that there must be some causal link between the alleged wrongful prosecution and the plaintiff's detention.[98] When there are valid charges in addition to the invalid ones, the Third Circuit stated in *Johnson v. Knorr*, and has continued to affirm, that the plaintiff must show that "the prosecution for the additional charges for which there might not have been probable cause . . . *resulted in additional restrictions on [the plaintiff's] liberty* beyond those attributable to the prosecution on the . . . charges for which there was probable cause."[99]

Setting aside causation for a moment, the Court finds the other elements have been adequately pled. Defendant initiated a criminal proceeding against Johnson when the delinquency petition was filed as a result of Defendant's investigatory efforts,[100] and the criminal prosecution ended in Plaintiffs' favor when it was

---

[97] *Chiaverini*, 602 U.S. at 564-65.

[98] *Chiaverini*, 602 U.S. at 564-65.

[99] *Johnson v. Knorr*, 477 F.3d 75, 86 (3d Cir. 2007) (emphasis added). *See also, e.g., Berry v. Kabacinski*, 704 F. App'x 71, 73 n.8 (3d Cir. 2017) (quoting *Johnson* for this proposition); *Batiz v. Brown*, 676 F. App'x. 138, 143 (3d Cir. 2017) (quoting *Johnson* for this proposition); *Blair v. City of Pittsburgh*, 711 F. App'x 98, 103 n.5 (3d Cir. 2017) (quoting *Johnson* for this proposition); *Scutella v. Cousins*, 811 F. App'x 110, 113 (3d Cir. 2020) (quoting *Johnson* for this proposition); *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 299-302 (3d Cir. 2024) (holding that *Johnson* did not clearly establish the requirement that each charge be supported by probable cause, but from that point crystallizing the right, and not disturbing the causation element).

[100] Doc. 30 at ¶ 27. *See Simonds v. Boyer*, No. 2:21-CV-841, 2025 WL 475363, at *14 (W.D. Pa. Feb. 12, 2025) ("A private defendant initiates criminal proceedings where either (1) the private

dismissed by Judge Gardner.[101] As discussed above, it is plausible that there was not probable cause to believe Johnson had committed the July 22, 2024 shooting given the knowledge available at the time.[102] Moreover, from Plaintiffs' pleadings, it appears plausible that Defendant acted with malice, as Defendant said exculpatory evidence would "hurt [his] case" against Plaintiff.[103] Finally, Johnson was seized, as he was detained at George Junior Republic for twenty-nine days.[104] As a result, Defendant's remaining arguments are twofold: first, that Plaintiffs have not adequately pled causation between the prosecution and Johnson's seizure, as there were other, valid charges pending; and, second, that Defendant is entitled to qualified immunity.[105]

First, the Court finds that Plaintiffs have pled a plausible causal link between the unfounded prosecution and Johnson's detention. Defendant argues that Plaintiffs have not shown that the "aggravated assault charge placed any additional burden upon him or caused the seizure."[106] While there were other, valid charges against

---

person's desire to have the proceeding initiated was the determining factor in the commencement of the prosecution, for example, through urging officers to prosecute the case; or (2) the public official acted upon the person's false information in carrying out the arrest.") (internal quotation omitted). Defendant has not contested this element was eventually met, contesting only that the search and arrest do not qualify. The Court agrees.

[101] Doc. 30 at ¶ 70.

[102] Indeed, at the time the petition alleging delinquency was filed on July 25, Plaintiffs plead that several individuals had identified to Defendant that the individual in the footage was not Johnson, but a different minor. This renders a finding of probable cause even less supported.

[103] Doc. 30 at ¶ 67.

[104] Doc. 30 at ¶ 45.

[105] Doc. 33 at 14-16; Doc. 36 at 13-14.

[106] Doc. 33 at 16 (citing *Johnson*, 477 F.3d at 85).

Johnson, it is plausible that Johnson would not have been detained but for Defendant's assertion that he had perpetrated the shooting at issue, as Plaintiffs pled that the serious nature of the offense, the shooting, was largely the basis of the Commonwealth's argument for Johnson's detention.[107] At this stage, this is sufficient to satisfy the causation requirement, as the charges plausibly "'resulted in additional restrictions on [Johnson's] liberty beyond those attributable to the prosecution on the [ ] charges for which there was probable cause.'"[108]

Next, Defendant argues that he is entitled to qualified immunity. Qualified immunity protects state officers unless there is a violation of a constitutional right that was clearly established at the time of violation.[109] "A right is clearly established where, 'at the time of the challenged conduct, the contours of [that] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[110] While immunity questions should be resolved "at the earliest possible stage in litigation,"[111] on a 12(b)(6) motion, qualified immunity

---

[107] While Defendant argues that these crimes are of similar grading, Plaintiffs' complaint indicates that the focus of the investigation and prosecution was on identifying the perpetrator of the shooting, and the gun charges were afterthoughts. Doc. 30 at ¶¶ 40-41, 47, 33 (pleading that ADA wade "argued that continued detention was necessary due in large part to the nature of the incident."); Doc. 32-2 (Exhibit A).

[108] *Batiz*, 676 F. App'x at 143 (quoting *Johnson*, 477 F.3d at 82). Discovery might very well reveal otherwise, but the Court must draw reasonable inferences in Plaintiffs' favor at this stage.

[109] *Rivera-Guadalupe*, 124 F.4th at 299-300.

[110] *Id.*

[111] *Hunger v. Bryant*, 502 U.S. 224, 227 (1991).

should bar the case only where "'immunity is established on the face of the complaint.'"[112]

Defendant argues that, because there were other, pending charges of a similar offense, the right to be free from malicious prosecution on some charges was not "clearly established."[113] This argument is ultimately unsuccessful at this stage. The Supreme Court of the United States and the Third Circuit had both clarified beyond dispute that criminal defendants have a right to be free from malicious prosecution on charges for which there is no probable cause, regardless of the existence of other charges supported by probable cause.[114] The only open question after *Chiaverini v. City of Napoleon, Ohio* is to what extent other, valid charges implicate the *causation* requirement, not the probable cause requirement.[115]

---

[112] *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

[113] Doc. 33 at 15-16. Defendant additionally attempts to argue that the decision in *Chiaverini* came out too recently in time to the events at hand to render the right clearly established. Doc. 33 at 15; 602 U.S. at 565. It is telling that Defendant cites no authority for the contention that there is some period of lag between clear Supreme Court guidance on a right and when reasonable officers would understand that right. None exists. The Supreme Court spoke on this right in *Chiaverini*: that is sufficient to render its interpretation clear. 602 U.S. at 562-63.

[114] *Chiaverini*, 602 U.S. at 564; *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016) (holding that "we must consider probable cause as to each of the charges" when analyzing a malicious prosecution claim); *Rivera-Guadalupe*, 124 F.4th at 299, 303 ("We . . . define the right at issue as the right to be prosecuted only for charges that are each supported by probable cause.").

[115] 602 U.S. at 563-65. Additionally, while not addressed by the parties, the Court is unsure whether the element of causation should be intertwined with the immunity analysis at all. *See Carver v. Foerster*, 102 F.3d 96, 101 (3d Cir. 1996) ("Causation relates to the merits of plaintiffs' claims, not to the question of . . . immunity."); *Marsden v. Kishwaukee Comm. Coll.*, 572 F. Supp. 3d 512, 526 (N.D. Ill. 2021) ("[C]ausation is not part of the qualified immunity analysis"); *Hatten v. Bledsoe*, No. 1:13-CV-0209, 2015 WL 791441, at *3, 4 n.5 (M.D. Pa. Feb. 25, 2015) (noting that the defendant's arguments were framed as a qualified immunity

As the Supreme Court declined to endorse any one of the three possible causation tests it laid out in *Chiaverini*, this Court looks next to controlling Third Circuit precedent to determine whether the issue has been clearly established.[116] The Third Circuit's existing test, as described above, is whether the unfounded charges "resulted in" additional liberty restrictions for malicious prosecution claims, a but-for causation standard.[117]

Applying the Third Circuit's standard, and looking to the "specific context of the case," Plaintiffs have plausibly pled that Defendant's particular conduct of arresting and prosecuting Johnson for a crime without probable cause violated his clearly established rights.[118] Plaintiffs' pleading establishes that, but for the aggravated assault charge arising out of the shooting, Johnson may not have been

---

argument but in actuality attacked the underlying substantive element of causation, and holding that "[e]ven if Defendants were making a 'clearly established' argument, it would fail" because the actions pled were unlawful). The Court encourages the parties to brief the issue at further stages of litigation.

[116] *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017); *Minor v. River*, 70 F.4th 168, 174 (3d Cir. 2023); *Otero v. Kane*, 161 F.4th 189, 194 (3d Cir. 2025); *Rivera v. Monko*, 37 F.4th 909, 919 (3d Cir. 2022); *cf Zorn v. Linton*, 146 S.Ct 926, 930 n.3 (2026).

[117] 477 F.3d at 86. This standard is clearly established within the Third Circuit, as the Supreme Court's brief discussion without analysis nor holding of the issue in *Chiaverini* did not overturn existing and controlling Circuit precedent. 602 U.S. at 565; *see supra*, note 99.

This standard also comports with the causation standard for which Defendant advocates. Defendant argues that "the Third Circuit's language in *Johnson* remains instructive on this issue, in finding that there must be an additional burden placed upon the criminal defendant by the invalid charge." Doc. 33 at 16. An "additional burden" placed upon the criminal defendant is akin to saying the unfounded charges "resulted in" additional liberty restrictions, as both are but-for causation standards. Plaintiffs have provided no other test, and Defendant's proffered test comports with the applicable Third Circuit jurisprudence.

[118] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original).

24

detained on the gun charges alone.[119] Given that it was clearly established in the Third Circuit at the time of Johnson's arrest that criminal defendants have a right not to be detained as a result of unfounded charges,[120] the qualified immunity doctrine does not bar Plaintiffs' claim at this stage.[121] Accordingly, the Court will deny Defendant's motion to dismiss Plaintiffs' Count IV malicious prosecution claim.[122]

### 4.    Count V – Unlawful Search

Next, Garrity brings a claim against Defendant for unlawful search under the Fourth Amendment.[123] The Fourth Amendment to the United States Constitution provides the right to be free from unreasonable searches and seizures; this typically requires law enforcement to obtain a warrant based on probable cause supported by oath or affirmation before searching persons or property.[124] A warrant issued by a neutral magistrate is usually the "clearest indication that the officers acted in an

---

[119] Doc. 30 at ¶¶ 40-41, 47, 33 (pleading that ADA Wade "argued that continued detention was necessary due in large part to the nature of the incident."); Doc. 32-2 (Exhibit A). Discovery will reveal whether this is indeed true or not.

[120] *Rivera-Guadalupe*, 124 F.4th at 299 ("We therefore define the right at issue as the right to be prosecuted only for charges that are each supported by probable cause.").

[121] However, should discovery show that Johnson would have been detained regardless of the aggravated assault claim, then the causal link would fail, and so too would Plaintiffs' claims, both substantively and on qualified immunity. At this stage, though, it is not clear from the face of the complaint that qualified immunity applies, given the factual dispute on causation.

[122] Plaintiffs are cautioned that the Court will not accept future briefings that lack adequate legal support. Should Plaintiffs fail to substantiate future claims, barebones arguments without appropriate legal authority will be deemed waived.

[123] Doc. 30 at Count V. While neither party states as much, the Court presumes that this claim is brought pursuant to § 1983 as well, which is the vehicle for which a plaintiff may assert a claim against state officials for violations of the Fourth Amendment.

[124] U.S. CONST. AMEND. IV; *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996).

objectively reasonable manner."[125] "Nonetheless, under [Supreme Court] precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness."[126]

There are two main challenges plaintiffs can bring in the face of a search conducted by a warrant: 1) the warrant is facially deficient, that is, the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,"[127] or 2) that the warrant is facially valid, but only because the officer soliciting the warrant provided materially false or incomplete information knowingly or with a reckless disregard for the truth.[128] Plaintiffs raise both types of challenges.[129]

The doctrine of qualified immunity must be analyzed here as well. Specifically, in this context, "'[p]olice officers applying for warrants are immune if

---

[125] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

[126] *Id.* at 547.

[127] *Messerschmidt*, 565 U.S. at 547.

[128] *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *3 (3d Cir. July 29, 2024) (citing to *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)). "This same framework applies whether a plaintiff alleges that a search warrant or arrest warrant lacked probable cause." *Id.*

[129] The Court notes that Count V does not clearly set forth these arguments, however the essence of the arguments are contained in the "Factual Allegations" section of Plaintiffs' Complaint. Doc. 30 at ¶¶ 19 (noting that Defendant identified the individual solely from the few seconds of video footage based on nothing); 48(e) (noting all the information omitted from Defendant's warrant application); 70(w) (noting that Judge Gardner held that Defendant omitted from his search warrant highly relevant information within his knowledge that the issuing authority would wish to know). Additionally, Plaintiffs do raise the arguments in their brief in opposition, even if done in an incredibly sparse manner. Doc. 35 at 8. Moreover, Defendant has responded to these arguments in their brief in reply, Doc. 36 at 16-17, so the Court sees no prejudice from addressing these arguments.

a reasonable officer could have believed that there was probable cause to support the application.'"[130] "[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions;"[131] "only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of immunity.'"[132] In determining whether a reasonable officer could have believed that it was reasonable to rely on a warrant, courts must look to the relevant circumstances, including "other information that the officer possesses."[133] Of course, "[w]here 'a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established' and, therefore, 'is not entitled to qualified immunity.'"[134]

---

[130] *Kitko v. Young*, No. 3:10-189, 2013 WL 5308016, at *9 (W.D. Pa. Sept. 20, 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

[131] *Pinkney v. Meadville, Pa.*, 648 F. Supp. 3d 615, 645 (W.D. Pa. 2023) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

[132] *Orsatti*, 71 F.3d at 483 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[133] *Berg v. Cnty. Of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000). While *Berg* analyzes an arrest warrant as opposed to a search warrant, the "same framework applies whether a plaintiff alleges that a search warrant or arrest warrant lacked probable cause." *Saintil*, 2024 WL 3565308, at *3.

[134] *Pinkney*, 648 F. Supp. 3d at 645 (quoting *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993)).

"Probable cause exists to support the issuance of a search warrant if, based on a totality of the circumstances, 'there is a fair probability that . . . evidence of a crime will be found in a particular place.'"[135] "Probable cause . . . requires more than mere suspicion."[136] Direct evidence is not necessary, and circumstantial evidence may suffice, as the determination of whether sufficient probable cause existed is a fact-intensive question.[137]

### a.    Facial Invalidity of Warrant

Turning now to the first type of challenge, that reliance on the search warrant was entirely unreasonable, Defendant has plausibly stated a claim for relief. While issues of immunity should be resolved at the earliest possible stage of litigation, the disputed factual issues here render dismissal improper. Neither party attached the search warrant here, so the Court must only rely on Plaintiffs' allegations and take them as true; in doing so, it is plausible that the issued warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[138] Judge Gardner's opinion, attached to Defendants' motion, describes Defendant's affidavit requesting a search warrant as

---

[135] *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[136] *Orsatti*, 71 F.3d at 482; *Arditi v. Subers*, 216 F. Supp. 3d 544, 551 (E.D. Pa. 2016).

[137] *See Dempsey*, 834 F.3d at 467-68; *Sherwood*, 113 F.3d at 401 ("Typically, the existence of probable cause in a section 1983 action is a question of fact.").

[138] *Messerschmidt*, 565 U.S. at 547.

stating that "the video shows a male who was later identified as [Johnson]."[139] This sentence contains no reference to the identity of who actually identified Johnson, nor did it give any basis for why or how Defendant believed that the individual was Johnson.[140] This is sufficiently lacking to plausibly render the warrant facially invalid, as it provides no basis of knowledge nor information to assess veracity or reliability for this identification.[141]

Additionally, even if the warrant was facially valid, an official is not immune from suit if his reliance on the warrant is "unreasonable in light of the relevant circumstances . . . . includ[ing], but [] not limited to, other information that the officer possesses."[142] Judge Gardner's opinion summarizes Defendant's testimony at the August 22, 2024 hearing as "[Defendant] knew MJ from other investigations involving juveniles but was not familiar with MJ and never had much prior personal

---

[139] Doc. 32-2 (Exhibit A) at 2.

[140] Plaintiffs plead that Defendant omitted this information from the affidavit. Doc. 30 at ¶ 48(e).

[141] *See, e.g., Illinois v. Gates*, 462 U.S. 213, 239 (1983) (holding that "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause" and noting that "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that'" an individual has committed a crime "will not do."). *Compare United States v. Lampley*, 615 F. Supp. 3d 289, 294-95 (M.D. Pa. 2022) (Brann, J.) (where the affidavit described an informant's connection to the criminal defendant and was able to provide some corroborating evidence); *United States v. Caesar*, 2 F.4th 160, 174 (3d Cir. 2021) (noting that affidavits based upon a "single uncorroborated anonymous tip" or "an officer's conclusory statement that he believed probable cause existed" are insufficient to render a warrant facially valid); *see United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2006) ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value of the tip goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable.").

[142] *Berg*, 219 F.3d at 273; *Fallen v. McEnroe*, No. 23-2312, 2025 WL 32816, at *3 (3d Cir. Jan. 6, 2025).

interaction with him;" and that Defendant thought it was MJ based on the perpetrator apparently having "dreads," but also noting that "although [Defendant] likely saw [Johnson] in passing during his time at the high school, there was nothing that stood out to him about [Johnson] and [Johnson] did not have dreads at that time."[143] Given that the factual information available to Defendant at the time he authored the warrant application could render his reliance on the warrant "unreasonable in light of the relevant circumstances," Plaintiffs have stated a claim for relief.

Accordingly, it is plausible that a "reasonably well-trained officer would have known" that this affidavit "failed to establish probable cause" and that the officer "therefore should not have applied for the warrant under the conditions."[144] At the very least, it is not clear from the face of the complaint that qualified immunity should bar this claim, as the determination of reasonableness here is fact-intensive.[145] Accordingly, Defendant's motion to dismiss is denied under this theory.

### b.    Reckless Omissions

Plaintiffs also challenge the veracity of the affiant, that is, that the author of the search warrant affidavit made false statements or omissions in applying for a search warrant. "To prevail on this claim, [Plaintiffs] must make two showings: first,

---

[143] Doc. 30-2 at 4-5.

[144] *Orsatti*, 71 F.3d at 483.

[145] *See Fallen*, 2025 WL 32816, at *3 (allowing a suit to proceed to additional factfinding before determining qualified immunity because the information possessed at the time by the officer was relevant to a determination of reasonableness and, thus, qualified immunity).

that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'"[146]

Information is omitted recklessly where an officer "withheld 'a fact in his ken that [a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'"[147] The officer must "have knowledge of the information alleged to have been recklessly omitted" and the information "must be relevant to the existence of probable cause."[148] Should there be improperly omitted facts, courts are to perform a literal, word-by-word "reconstructive surgery" of the affidavit to determine whether the omissions were material to the determination of probable cause.[149]

Here, Plaintiffs' complaint plausibly establishes that material information was recklessly omitted. Plaintiffs plead that Defendant omitted from his application that he was the one who identified Johnson and all underlying relevant facts about this identification, leading Judge Gardner to conclude that Defendant "omitted from his

---

[146] *Dempsey*, 834 F.3d at 468-69.

[147] *Id.* at 470 (quoting *Wilson*, 212 F.3d at 788 (internal quotation omitted)).

[148] *Id.* at 471. "The relevance requirement 'ensures that a police officer does not make unilateral decisions about the materiality of information' by enabling a magistrate to decide independently, on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause." *Id.*

[149] *Id.* at 470.

search warrant application highly relevant information within his knowledge that the issuing authority would wish to know because it would have significantly called into question the application's probable cause."[150] The information about how Johnson was identified in the video is integral to the determination of the sufficiency of probable cause, given that the identification was the only thing purportedly tying Johnson to the crime. Accordingly, Plaintiffs have pled reckless omissions.

Next, while courts can undergo probable cause affidavit reconstructions at the motion to dismiss stage,[151] neither party has attached the affidavit of probable cause at issue, and the Court accordingly cannot accurately perform a full affidavit reconstruction at this stage. Plaintiffs plead, and the Court must accept as true, that the only information Defendant put in the affidavit was the conclusory statement that Johnson was the individual from the video footage.[152] Moreover, the only information Defendant had supporting his purported identification was the belief that the individual on the footage had dreadlocks.[153] Accepting these allegations as true, should the affidavit be reconstructed with the alleged omissions, namely that Defendant was the source of the identification[154] and the underlying context of that

---

[150]  Doc. 30 at ¶ 48, 70.

[151]  *Pinkney*, 95 F.4th at 747-49.

[152]  Doc. 30 at ¶ 48.

[153]  *Id.* at ¶ 20.

[154]  Even if Defendant treated his own identification as statements of a fellow officer, a fellow officer's identification or statement still needs to be supported by facts that satisfy the probable cause standard. *Vanderklok v. United States*, 140 F. Supp. 3d 373, 382 (E.D. Pa. 2015).

identification including Defendant's lack of familiarity with Johnson, [155] the affidavit would not have established probable cause.[156]Accordingly, Plaintiffs have pled a plausible Fourth Amendment violation for unlawful search based on affiant veracity.

Therefore, for either theory of liability, Plaintiffs have stated a plausible claim for unlawful search under the Fourth Amendment, and Defendant's motion to dismiss Count V is dismissed.

### 5.    Count VI – IIED

Plaintiffs also bring a state tort law claim for intentional infliction of emotional distress ("IIED"). "[T]o succeed on an intentional infliction of emotional distress claim, [the plaintiff] must show that []he suffered 'some type of resulting physical harm due to the defendant's outrageous conduct.'"[157]

Plaintiffs plead that "Defendant engaged in extreme and outrageous conduct that caused Plaintiffs to suffer severe emotional distress." This conclusory allegation need not be credited, and while Plaintiffs incorporate all their factual allegations, none of those factual allegations address whether Plaintiffs suffered extreme emotional distress, nor whether that distress manifested in any physical ways as is

---

[155] *See Pinkney*, 648 F. Supp. 3d at 636 (holding that an eyewitness's tentative identification "without any meaningful inquiry regarding the basis for that assessment" could not support probable cause, and where the "identification procedure . . . was so defective that probable cause could not reasonably be based upon it").

[156] Given that I have also held above that the warrant itself was plausibly facially invalid, this is necessarily true as well, as even without the omissions the warrant lacked probable cause.

[157] *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (dismissing an IIED claim for police misconduct because the plaintiff "ha[d] not pointed to any physical harm she suffered as a result of police conduct."); *see also Davis v. Wigen*, 82 F.4th 204, 216 3d Cir. 2023).

required by Pennsylvania law. Accordingly, Plaintiffs claim is legally deficient, and Defendant's motion to dismiss is granted without prejudice for Count VI.[158]

### 6.    Count VII – NIED

Finally, Plaintiffs bring a negligent infliction of emotional distress ("NIED") claim against Defendant. The Political Subdivision Tort Claims Act ("PSTCA") provides immunity to municipal employees "from liability for any damages resulting from an injury to a person or property caused by any act of the City, its employee, or any other person, except as specifically provided for under 42 Pa.C.S.A. § 8542."[159]   Section 8542 lists exceptions where plaintiffs can recover for negligence, such as various city planning and maintenance issues,[160] and "[a]n employee's immunity does not extend to acts that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct."[161]

As the negligence at issue falls within none of the exceptions listed in § 8542, and as NIED is necessarily a tort of negligence as opposed to intention, Plaintiffs'

---

[158] Plaintiffs will be provided leave to amend, should they care to do so. However, Plaintiffs are instructed that conclusory allegations of "severe emotional distress" *will not* suffice to meet this element. Plaintiffs must plead facts sufficient to support 1) Plaintiffs suffered severe emotional distress that 2) resulted in physical bodily harm. Additionally, should Plaintiffs file a second amended complaint, they must address Defendant's arguments, including whether Defendant's conduct exceeded all bounds of decency or was "otherwise exceptionally reprehensible," *see Shaffer v. City of Pittsburgh*, 2015 WL 48789497, at *10 (W.D. Pa. Aug. 14, 2015), whether Defendant's conduct satisfies the Political Subdivision Tort Claims Act standard, and whether Defendant's conduct constituted affirmative action or was a lack of action.

[159] *Renk v. City of Pittsburgh*, 537 Pa. 68, 73 (1994); 42 Pa.C.S.A. § 8541.

[160] 42 Pa.C.S.A. § 8542.

[161] *Id.*; 42 Pa.C.S.A. §§ 8550, 8548(a).

NIED claim is barred by the PSTCA.[162] Accordingly, I will grant Defendant's motion to dismiss Count VII with prejudice.[163]

## III. CONCLUSION

Defendant[s]' motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.

Defendant's motion is granted with prejudice[164] as to: Plaintiffs' Count I and III Fourth Amendment claims for detention beginning after the discovery of the firearm; and Plaintiffs' Count VII in full.

Defendant's motion is granted without prejudice[165] as to: Plaintiffs' Count I Fourteenth Amendment claims; Plaintiffs' Count II in full; Plaintiffs' Count IV Fourteenth Amendment claims; and Plaintiffs' Count VI in full.

Defendant's motion is denied as to: Plaintiffs' Count I and III Fourth Amendment claims for the period between Johnson's detention and the discovery of

---

[162] *See, e.g., Young v. Scott Twp.*, 469 F. Supp. 3d 298, 310 (M.D. Pa. 2020) (Brann, J.) ("The PSTCA certainly applies to Plaintiffs' claim of negligent infliction of emotional distress."); *Sparacino v. Scranton Sch. Dist.*, No. 3:23-CV-01726, 2025 WL 2524851, at *9 (M.D. Pa. Sept. 2, 2025); *Doe v. Cumberland Valley Sch. Dist.*, No. 1:25-CV-00158, 2026 WL 21364, at *16 (M.D. Pa. Jan. 5, 2026); *Ruiz-Rivera v. City and Cnty. Of Lancaster*, No. 21-2105, 2021 WL 4145054, at *9 (E.D. Pa. Sept. 9, 2021); *Boria v. Bowers*, No. 06-4384, 2007 WL 2726338, at *6 (E.D. Pa. Sept. 17, 2007).

[163] Given the legal deficiency of this claim, allowing amendment would be futile.

[164] Leave to amend for these claims is denied for futility, as even if amended they would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

[165] The Court will grant leave to amend for these deficiencies under the liberal civil pleading philosophy. *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)

the firearm; Plaintiffs' Count IV Fourth Amendment claims; and Plaintiffs' Count V in full.

As such, Plaintiffs will be given fourteen (14) days from today's date to file an amended complaint.  If no amended complaint is filed, the dismissed claims will be subject to dismissal with prejudice. Defendant will have twenty-one (21) days after the expiration of this period or from the date of filing of a second amended complaint to file an answer.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

36